ELECTRO-MAGNETIC M. & DEVELOPMENT CO. v. VAN
AUKEN ET AL.

1. Section 7, Gen. Laws Colo. p. 630, which provides that "* * * an adit of at least ten feet in, along the lode, from the point where the lode may be in any manner discovered, shall be equivalent to a discovery shaft," contemplates that as to the ten feet required it might be either open or under cover, or open in part and under cover in part, dependent upon the nature of the ground.
2. In the construction of statutes, general terms are to receive such reasonable interpretations as leave the provisions of the statute practically operative.

*Appeal from District Court of Clear Creek County.*

THE appellees were the plaintiffs below. The complaint alleges, in substance, that on April 1, A. D. 1881, the premises known as the "Willamette Lode" was part of the public mineral domain of the United States, and open to location; and that on said date Sarah J. Arden, Charles E. Lombard and William Olmsted began to sink a discovery shaft thereon, and on May 10, A. D. 1881, discovered a well-defined crevice, at a depth of more than ten feet from the lowest rim at the surface; that on May 12, A. D. 1881, they marked the boundaries, etc., and on May 26, A. D. 1881, they executed, and caused to be recorded, their location certificate, etc.; that by mesne conveyance, the plaintiffs have become the owners, and are entitled to the possession, of the premises, and have expended $100 on the same; that on May 17, A. D. 1882, defendants wrongfully ousted plaintiffs from the possession of the premises, etc.; that this suit is brought in support of an adverse claim, etc., against an application for a patent to the Smelter lode; that plaintiffs expended $35 for plats and $50 for attorney's fees. They pray judgment for restitution of the premises and $185 damages. For a further cause of action the complaint alleges, in substance, that plaintiffs, on March 13, A. D. 1882, and ever since, were and are entitled to the Rescue

lode; that they claim the right to occupy and possess the same by virtue of a full compliance with the laws relative to lode mining claims upon the public domain, etc.; that on May 17, A. D. 1882, the defendants wrongfully entered on a part of said premises, and wrongfully withhold the same; that this suit is brought in support of an adverse claim; that they have expended $35 for plats, etc., and $50 for attorney's fees. They demand judgment for a restitution of the premises; for $100 damages, and $85 expended in support of the adverse claim; and for costs of suit.

The answer alleges, in substance, that defendants deny the allegations contained in the first cause of action, etc.; that they deny the allegations contained in the second cause of action, etc.; that they claim the right to the Smelter lode by virtue of discovery and location on March 4, 1882, and a relocation March 20, 1882, and a full compliance with the laws relating to the discovery and location of mining claims upon the public domain. For a third defense the complaint alleges, in substance, that they are a corporation, duly organized, etc.; that on May 7, A. D. 1882, and for a long time prior thereto, they were and are the owners of, and entitled to the possession and are in the actual occupation of, the Smelter lode, etc.; and they claim the right, etc., by virtue of a full compliance with the law, etc.; that on or about May 17, A. D. 1882, they applied for a patent for the Smelter lode, including the premises in controversy.

Trial by jury, and verdict for the plaintiffs.

Messrs. MITCHELL and PALMER, for appellant.

Messrs. MORRISON and FILLIUS, for appellees.

ELBERT, J.   Section 7, General Laws, 630, provides that "any open cut, cross-cut or tunnel, which shall cut a lode at the depth of ten feet below the surface, shall hold such lode, the same as if a discovery shaft were

sunk thereon; or an adit of at least ten feet in, along the lode, from the point where the lode may be in any manner discovered, shall be equivalent to a discovery shaft."

In the case of *Gray* v. *Truby*, 6 Colo. 278, it was held that while the open cut, cross-cut or tunnel must cut the lode at the depth of ten feet below the surface, there was no such requirement in the case of an adit; that while there was no express requirement of depth, the development must always be such in its dimensions and character as to make it fairly the equivalent of a discovery shaft. In that case the evidence showed that "the appellant, in lieu of a discovery shaft, opened an adit on his lode, beginning at the surface where the lode was discovered, and running in and along the lode a distance of twenty or twenty-five feet, where it obtained a depth of eight or nine feet below the surface." In this case the evidence shows that the defendant company, in lieu of a discovery shaft, opened an adit on its lode, beginning at the surface where the lode was discovered, and running in and along the lode (well defined and with mineral) a distance of fourteen or fifteen feet, where it obtained a depth of about nine feet; that the adit, at a distance of about six feet from the point of beginning, entered cover; and that the remaining nine feet were under cover and timbered. The court below rejected the excavation made by the defendant company as not a sufficient "open cut," because it did not cut the lode at a depth of ten feet below the surface. There was no error in this. There was error, however, in rejecting the excavation as an adit because it was not under cover.

Every adit upon a hill-side, if continued, must enter cover at some distance from the point where the excavation begins,— at what distance will depend upon the inclination of the surface. Supposing the lode to outcrop, the point where the excavation enters cover, and the point where the lode was discovered, would never concur, except when the ground presented a perpendicular

face.  The term "adit," as the legislature understood it,
is what must govern.  In this section they were legislat-
ing with reference to an actual condition of things,—
with reference to mining lodes so situated as to be
reached by means of horizontal excavations.  To an ex-
cavation "in and along a lode" they applied the term
"adit," and fixed the point where "the lode may be in
any manner discovered" as the initial point from which
the development was to be measured.  The point at
which the excavation enters cover was not mentioned,
and clearly was not in contemplation.  The effect of the
ruling of the court was to fix "cover" as the initial point
of measurement.  This is in derogation of the express
provision of the statute.  We find nothing in the tech-
nical meaning of the word that rejects such portion of
the excavation at the mouth of the adit as may be in the
nature of an open cut as not being a part of the adit.
As the term is used in the statute, the legislature must
have contemplated that, as to the ten feet required, it
might be either open or under cover, or open in part and
under cover in part, dependent on the nature of the
ground.  In the construction of statutes, general terms
are to receive such reasonable interpretation as leaves the
provisions of the statute practically operative.

Although the discovery and location of the Willamette
lode were prior in point of time to the location of the
lode of the defendant company, there was much conflict
in the testimony as to the depth of the discovery shaft.
As the instructions of the court practically precluded
a finding for the defendant company, it remains doubtful
whether the verdict of the jury in favor of the plaintiff
was not based upon that fact, rather than upon evidence
showing a legal discovery shaft in the case of the Willa-
mette.  However this may be, the defendant was enti-
tled to have the whole case submitted, under proper
instructions.

The judgment of the court below is reversed, and the
cause remanded.                                *Reversed.*