## HARDING V. THE PEOPLE.

1. Except in the case of the agreement provided for in section 962,
   General Statutes, the law requires in all criminal cases that the
   jury return to and declare their verdict in open court.
2. The act entitled " An act to protect the public health and regulate
   the practice of medicine in the state of Colorado " (Gen. Stat.
   p. 773), *held* to be not in conflict with section 2, article IV, of the
   constitution of the United States, nor with that part of the four-
   teenth amendment which provides that " no state shall make or
   enforce any law which shall abridge the privileges or immunities
   of citizens of the United States."
3. With respect to the " title " of an act under section 21, article V, of
   the state constitution, the only requirement is that the title clearly
   express the subject of the act.   The inhibition goes to "acts " con-
   taining more than one subject.

4. In the absence of any emergency clause, in view of the constitutional provision (sec. 19, art. V), the expression " after the passage of the act," as used in the law, can have but one meaning, namely: after the act goes into effect. In the construction of statutes, general terms are to receive such reasonable interpretation as leaves the provision of the statute practically operative.

5. The provisions of the act show beyond any question that the clear intention of the legislature was to require all persons desiring to practice medicine or surgery within this state to apply for and receive a certificate of qualification from the state board of medical examiners before they were authorized to do so.

6. Every law which imposes a penalty is not, legally speaking, a penal law; that is, a law which is to be construed with great strictness in favor of the defendant.

7. It is not necessary to negative an exception not embraced within the same clause that defines and creates the offense and which constitutes no part of the description of the offense. When an exception is contained in a distinct section it is a matter of defense.

8. If the statute creating an offense is silent concerning the intent, there need be no intent alleged.

9. *Mandamus* is the remedy when a board of examiners arbitrarily refuse an application for a certificate to practice.

*Error to Criminal Court, Arapahoe County.*

ELIZA J. HARDING was arraigned and tried on an information filed by the district attorney in the criminal court of Arapahoe county, in which information she was charged with unlawfully practicing medicine and surgery, without having received from the state board of medical examiners of the state of Colorado a certificate authorizing her to practice medicine and surgery in said state. The information contained two counts, the second of which charges her with unlawfully practicing medicine and surgery without having presented to the state board of medical examiners for verification a diploma from a legally chartered medical school, and without having furnished to said board other evidence conclusive of her being a graduate of a legally chartered medical school in good standing. In other respects the second count is like the first. The trial ended in conviction, and the imposition of a fine of $100, and costs.

The defendant below brings the cause to the supreme court by writ of error. The further facts sufficiently appear in the opinion of the court.

Mr. MATT ADAMS, for plaintiff in error.

The ATTORNEY-GENERAL, for defendant in error.

ELBERT, J. It appears that after the jury in this case had retired to consider their verdict, the court adjourned until the following day; that during the adjournment the jury returned into the court room, and, in the presence of the judge and clerk, returned their verdict of guilty, and that thereupon the judge discharged the jury from further attendance in the cause, and, on the incoming of the court the following day, ordered the verdict to be recorded, and to stand as the verdict in the cause. We think this was error. The agreement of counsel, which was entered upon the minutes of the court, was limited to the one stipulation, viz.: "That the verdict herein may be received though the defendant be not present." It does not appear to have been made with reference to, and does not comply with, section 962, General Statutes, which provides "that, in every case of misdemeanor only, if the prosecutor for the people and the person on trial, by himself or counsel, shall agree, which agreement shall be entered on the minutes of the court, to dispense with the attendance of an officer upon the jury, or that the jury, when they have agreed upon their verdict, may write and seal the same, and, after delivering the same to the clerk, may separate, it shall be lawful for the court to carry into effect any such agreement, and receive any such verdict delivered to the clerk as the lawful verdict of any such jury." A similar provision in the statutes of Illinois has been held to allow the jury, its provisions having been complied with, not only to withdraw from the charge of the officer, but to seal their verdict and separate as an organized jury. *Reins v. People*, 30 Ill.

272.  In the absence of the agreement provided for by
this section, we know of no authority that authorized the
judge to receive the verdict and discharge the jury during
the adjournment.  At common law, in trials for misde-
meanors, a privy verdict was allowed, and there was no
occasion for the presence of the defendant.  1 Chit. Crim.
Law, 636.  But a privy judgment only contemplated the
separation of the jury until the meeting of the court,
when their verdict was received in open court from the
lips of the foreman, and recorded in the usual way.  This
finding in open court was what decided the rights of the
parties, and was what was admitted to record.  *Dornick
v. Reichenback*, 10 Serg. & R. 90.  Except in the case of
the agreement provided for in the section to which we
have referred, we think the law requires in all criminal
cases that the jury return to and declare their verdict in
open court.  Whether, in cases not capital, the jury may
not be allowed, upon agreement of parties, to deliver
their verdictt when found, to the judge or clerk, and sep-
arate until the incoming of court, is a question we are
not to be understood to be deciding.  *Reins v. People*,
30 Ill. *supra*.

For the foregoing reasons the judgment of the court
below must be reversed and the cause remanded.  Some
of the other assignments of error present questions which
will necessarily arise upon a new trial, and in that view
we deem it advisable to notice them.

The act under which the plaintiff in error, the defend-
ant below, was convicted, is entitled " An act to protect
the public health and regulate the practice of medicine
in the state of Colorado."  Gen. St. 773.  By its provisions,
the legislature has attempted to protect the public from
the evils arising from the practice of medicine and sur-
gery by persons not qualified.  No question is made re-
specting the general power of the legislature to pass acts
of this character, nor can any question be made touching
the wisdom and necessity of laws securing protection to

the public in this most vital matter.   We do not see, as is claimed, that the provisions of the act are in conflict with section 2, article IV, of the constitution of the United States, which provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," or with that part of the fourteenth amendment which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

The act we are considering makes medical qualification the test of the right to practice medicine and surgery, and the field is open to all persons who possess the qualifications prescribed by the act.   We find nothing in its provisions inconsistent with that rule of equality which the constitutional provisions we have quoted prescribe. Touching a like question, under a similar statute, it is said:   "Under the provisions of the constitution of the United States, every citizen has the undoubted right to pursue any lawful profession, calling or employment, in a lawful manner; but these pursuits are always subject to such restrictions as may lawfully be prescribed by the legislature of each state in order to protect the public health and promote the general interests of society, and, as long as such restrictions leave the field open for every citizen of the United States who comes endowed with all the necessary qualifications to practice his profession, pursuit or calling, the law cannot be declared unconstitutional."   *Ex parte Spinney,* 10 Nev. 336.

It is also urged that the title of the law contains two subjects of legislation, in contravention of section 21, article V, of the constitution, which declares that "no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title.   *   *   *"   The objection is to two subjects in the "title," not to two subjects in the "act." The constitutional inhibition goes to "acts" containing more than one subject.   With respect to the title, the

only requirement is that it clearly express the subject of the act. It is very clear that the act concerns but one subject of legislation, viz., the regulation of the practice of medicine within the state of Colorado. There is no union in the act of incongruous matters, having no necessary connection or relation, and the subject of the act is clearly expressed in the title. These were the two purposes the constitutional provision which we have quoted was intended to accomplish. It is true that the title expresses both the general and special character of the act; but we see no objection to this. It none the less clearly expresses the subject of the act.

Our attention is also called to section 5 of the act, which provides that " the state board of medical examiners, within ninety days after the passage of the act, shall receive through its president applications for certificates and examinations. * * *" In this connection we are cited to section 19, article V, of the constitution, which provides that "no act * * * shall take effect until ninety days after its passage, unless in case of emergency. * * *" In the absence of any emergency clause, in view of this constitutional provision, the expression "after the passage of the act," as used in the law, can have but one meaning, namely, after the act goes into effect. In the construction of statutes, general terms are to receive such reasonable interpretation as leaves the provision of the statute practically operative. *Electro-Magnetic M. & D. Co. v. Van Auken,* 9 Colo. 207.

The objection made in this connection to the regularity of the appointment and organization of the board need not be considered. It is enough that the board was *de facto* the state board of medical examiners, acting under the provisions of the statute, and that its certificate would have protected defendant from prosecution under the statute.

It is claimed that the act nowhere prohibits the practice of medicine without a certificate from the board of med-

ical examiners. This objection appeals alone to the letter of the law. The provisions of the act show beyond any question that the clear intention of the legislature was to require all persons desiring to practice medicine or surgery within the state after its passage to apply for and receive a certificate of qualification from the state board of medical examiners before they were authorized to do so. This is the essential requirement of the statute, and all its provisions are substantially to this end.

Section 4 of the act declares that every person practicing medicine in any of its departments shall possess the qualifications required by this act. Whether a person possesses the qualifications required can be determined only in one way, viz., in the mode prescribed by the statute, and can be proven only in one way, viz., by the evidence prescribed by the statute. The provisions respecting the mode of determining this fact, and the evidence of the determination are exclusive. The party wishing to practice must appear before the state board of medical examiners established by the act, must present the requisite diploma or stand the examination prescribed. If his diploma or his examination, as the case may be, is satisfactory to the board of examiners, they "shall issue their certificate in accordance with the fact," "and the holder of the certificate shall be entitled to all the rights and privileges mentioned in the act." Until he does this, he is without the requisite and only admissible evidence that he possesses the qualifications required by the act, so as to entitle him to practice medicine within the state, and cannot say that he has complied with the provisions of the act.

This is not a law which comes within the rule that penal laws are to be construed strictly. Justice Story says: "In one sense, every law imposing a penalty or forfeiture may be deemed a penal law. In another sense, such laws are often deemed, and truly deserve to be called, remedial." The judge was therefore strictly ac-

curate when he stated "that it must not be understood that every law which imposes a penalty is therefore, legally speaking, a penal law; that is, a law which is to be construed with great strictness in favor of the defendant. Laws enacted for the prevention of fraud, for the suppression of a public wrong, or to effect a public good, are not, in the strict sense, penal acts, although they may inflict a penalty for violating them. * * * It is in this light I view the revenue laws, and I would construe them so as to most effectually accomplish the intention of the legislature in passing them." *Taylor v. U. S.* 3 How. 210. This is the enlightened and reasonable rule by which the act we are considering is to be interpreted.

Section 20 provides "that nothing in this act shall be construed to prohibit gratuitous services in case of emergency." It was not necessary, as is claimed, to negative this exception in the information against the defendant for a violation of the provisions of the act. The exception is not embraced within the same clause that defines and creates the offense, and constitutes no part of the description of the offense. It is contained in a distinct section, and is matter for defense. 1 Whart. Crim. Law, § 378; *State v. Barker*, 18 Vt. 195.

Nor was it necessary to allege any criminal intent. The rule is that, if the statute creating the offense is silent concerning the intent, there need be no intent alleged. Bish. Crim. Proc. § 523.

The points which we have decided are believed to cover all the important assignments respecting the admission or rejection of evidence and the giving and refusing of instructions. The court below tried the case substantially upon the view of the law which we have presented. The evidence showed that the defendant was engaged in the practice of medicine by the administration or application of electricity as a curative agent, and without having first obtained a certificate from the state board of medical examiners as required by the act. If it be true

that the board of examiners arbitrarily refused her application for a certificate to practice, her remedy was *mandamus.   Deitz v. City of Central,* 1 Colo. 332.

For the error we have discussed in the first part of the opinion the judgment of the court below must be reversed and the cause remanded.

*Reversed.*