## DECEMBER TERM, 1887.

| 10 | 517 |
| 28 | 181 |

### CRAIG V. THOMPSON ET AL.

1. Under Revised Statutes of United States, section 2334, providing that the record of a mining claim shall contain a description of the claim located by reference to some natural object or permanent monument, a certificate giving the courses of two mountain peaks, in degrees and minutes, from the discovery shaft, was *prima facie* sufficient, and properly admitted in evidence.

2. In a suit to establish an adverse mining location, the court, of its own motion, instructed the jury concerning the statutory requirements relating to depths of discovery shafts or open cuts, and length of *adits*. *Held*, that as the jury were properly instructed, and their verdict was supported by the evidence, the rejection of instructions offered on the same points was not error.

3. Where one has long since abandoned any rights he may have had in a mining claim, and was not a party asserting any rights in the action, nor was any one authorized to represent him, instructions asked by defendant as to his rights were properly rejected.

4. Where one had made a location of a mining claim, valid in other respects, but had failed to file for record a valid certificate, an amended certificate, made before defendant had acquired intervening rights, would, as to him, relate back to and preserve the claim as originally located and staked.

*Appeal from District Court, Chaffee County.*

THIS was an action brought by George M. Thompson, George Parry and Daniel C. Sindlinger in support of an adverse claim to the ground in controversy, under the name of the "Bristol Lode," against J. R. Craig, who claimed the same under the name of the "Mammoth Lode." From the evidence it appears that Parry discovered the Bristol lode on the 4th day of August, 1880, then put up at the point of discovery a stake marked: "Bristol Mine. I locate this claim August 4, 1880, and claim one thousand three hundred feet north, and two hundred feet south. G. W. Parry & Company." On September 4, 1880, defendant Craig made his discovery of the

Mammoth lode, and put up a stake marked: "The Mammoth lode, discovered September 4, 1880. I, the undersigned, claim, by right of discovery, five hundred and fifty feet south and nine hundred and fifty feet north." On the 6th day of September, 1880, Craig met Parry somewhere (not on the premises), and, while together, Parry remarked, "I must go up and do my work on the Bristol mine up there;" when Craig said to him, "I have got a stake pretty close to your ground, and I would like to get enough ground to work it," and spoke of buying some ground from Parry. Parry deferred until they would go up and see; so they started up the mountain to see. On the way met Thompson and Sindlinger. Craig requested them to go along to see Parry's stake, so all went together. When approaching the claims, Craig's stake was seen by Parry, whereupon Parry charged Craig with being on his claim. Craig disputed, and said Parry did not have a legal stake. Parry charged him with trying to jump his claim. From thenceforward the parties remained at difference concerning the claims. About the 9th of September, 1880, Thompson and Sindlinger completed with Parry the purchase of an interest in the Bristol, and appellees then proceeded to do the discovery work upon the Bristol, so that towards the end of the month they had done several days' work thereon, and what they considered and regarded sufficient discovery work. It appears from the evidence that, at the time of discovery and putting up of the stake on the Bristol, Parry contemplated investing an interest in the claim in a man by the name of Runkle, and says that is why he put the word "company" after his name on the stake; but that as Runkle afterwards sent for his tools, saying he could not do anything more, he was dropped out. About September 9th or 10th, Sindlinger saw Craig going up towards the claims with stakes, whereupon he notified Craig that he had an interest in the Bristol, and that Craig should not go onto it. Craig disputed the legality

of Parry's claim. After finishing the discovery work upon the Bristol in September, 1880, the appellees surveyed the claim with fish-line and compass, following the vein north and south, and staked the claim according to law, made a location certificate, and had it recorded November 4, 1880; did the assessment work upon the Bristol for the year 1881, and with surveyor surveyed the Bristol, December 20, 1881, having the original location certificate as a guide to the same; made an amended certificate and recorded it January 12, 1882. The amended certificate described the same ground that was described by the original certificate, but referred to natural objects to identify the claim, in which respect the original certificate was defective. But these certificates were admitted in evidence, but afterwards the court excluded the original for the reason of the defect aforesaid. The original certificate is as follows:

"STATE OF COLORADO, *County of Chaffee* — ss. Know all men by these presents that G. W. Parry, D. C. Sindlinger and G. M. Thompson, the undersigned, have this 4th day of August, 1880, located and claimed, and by these presents do locate and claim, by right of discovery and location, in compliance with the mining acts of congress, approved May 10, 1872, and by subsequent acts, and with local customs and laws and regulations, one thousand five hundred linear feet and horizontal measurement on the Bristol lode, vein, ledge or deposit, along the vein thereof, with all its dips, angles and variations, as allowed by law, together with one hundred and fifty feet on the west side, and one hundred and fifty feet on the east side, of the middle of said vein at the surface, so far as can be determined from present developments, and all veins, lodes, ledges or deposits and surface ground within the line of said claim, one thousand three hundred feet running north from center of discovery shaft, and two hundred feet running south from center of discovery shaft; said discovery shaft being situate

upon said lode, vein, ledge or deposit, and within the lines of said claim, in La Plata mining district, county of Chaffee, state of Colorado, described by metes and bounds as follows, to wit: Beginning at corner No. 1, running north one thousand five hundred feet to corner No. 2; from thence three hundred feet west to corner No. 3; thence one thousand five hundred feet south to corner No. 4; and from thence three hundred feet to corner No. 1. The above-named claim is located on Mount Hope; the said Mount Hope being situated on Clear creek, in La Plata mining district, county of Chaffee, and state of Colorado. Said claim is situated above timber line, and the stakes of corners Nos. 1 and 4 are located in what is known as 'Hewitt's Basin.' Said lode was discovered on the 4th day of August, A. D. 1880.

[Signed]          "G. W. PARRY.
                  "D. C. SINDLINGER.
                  "GEO. M. THOMPSON.

"Recorded November 4, 1880, 6:30 o'clock P. M."

Following is a copy of the amended location certificate of the Bristol lode:

"STATE OF COLORADO, *County of Chaffee* — ss. Know all men by these presents that we, G. W. Parry, D. C. Sindlinger and G. M. Thompson, the undersigned, have this 20th day of December, 1881, relocated and claimed, and by these presents do relocate and claim, by right of discovery and location, in compliance with the mining acts of congress, approved May 10, 1872, and by subsequent acts, and with local customs, laws and regulations, one thousand five hundred linear feet and horizontal measurement on the Bristol lode, vein, ledge or deposit, along the vein thereof, with all its dips and angles and variations, as allowed by law, together with one hundred and fifty feet on the east side, and one hundred and fifty feet on the west side, of the middle of said vein at the surface, so far as can be determined from present development, and all veins, lodes, ledges or deposits and sur-

face grounds within the lines of said claim, one thousand three hundred feet running north from center of discovery shaft, and two hundred feet running south from center of discovery shaft; said discovery shaft being situate upon said lode, vein, ledge or deposit, and within the lines of said claim, in La Plata mining district, county of Chaffee, and state of Colorado, described by metes and bounds as follows, to wit: Beginning at corner No. 1; thence north 14° 26' east, seven hundred and fifty feet, to center side stake, and one thousand five hundred feet to corner No. 2; thence north 75° 34' west, three hundred feet, to corner No. 3; thence south, 14° 21' west, seven hundred and fifty feet, to side center stake, and one thousand five hundred feet to corner No. 4; thence south, 75° 34' east, three hundred feet, to corner No. 1, the place of beginning, as originally staked on the surface variations, 14° 28' east,— being the same lode originally located on the 18th day of October, A. D. 1880, in Book No. 13, page 381, in the office of the recorder of said Chaffee county. From the discovery shaft of said lode, an unknown mountain peak on the east side of Mission gulch, on Clear creek, bears south, 49° 34' east, and mountain peak at head of Lake Fork of Clear creek bears south, 12° 14' east. This further certificate of location being made without waiver of any previous rights, but to correct any error in prior location or record, and to secure all the benefits of section 1823 of the General Laws of Colorado.

"Date of relocation, December 20, 1881.

"Date of certificate, January 9, 1882.

[Signed]          "G. W. PARRY.          [SEAL.]

"D. C. SINDLINGER.          [SEAL.]

"G. M. THOMPSON.          [SEAL.]

"Filed January 12, 1882."

Craig worked his claim, staked it, surveyed and located it; his original location certificate being defective, and excluded as evidence. In the month of September, 1881,

he made an amended certificate, including therein that portion of the Bristol in controversy here, being the same portion as he had before included within his stakes, and in his original location certificate, and recorded such amended certificate two days thereafter, viz., September 19, 1881, and had $500 worth of work done on the Mammoth when he made application for his patent. This amended certificate of the Mammoth was admitted in evidence.

The court instructed the jury, on its own motion, as follows: "(1) That to perfect a valid location of a mining claim, under the law, the locator must first discover a vein, ledge or deposit of rock in place, carrying gold, silver, lead or other valuable deposit. He must post, at the point of discovery on the surface, a plain sign or notice, containing the name of the lode, the name of the locator and date of discovery. He must also, within sixty days from the date of discovery, sink a discovery shaft to the depth of at least ten feet from the lowest part of the rim thereof at the surface, or deeper, if necessary to discover the vein thereof. Within three months from the date of discovery, and before the filing of the location certificate hereinafter referred to, he must erect six substantial posts, hewed on the sides in towards the claim, to wit, one at each corner, and one at the center of each side line thereof, and, within three months of the date of discovery, he must further file with the clerk and recorder of the county in which the claim is located a location certificate, containing the name of the lode, the name of the locator, the date of location, the number of feet claimed on each side of the center of the discovery shaft, the general course of the lode, as near as may be, and such a general description as shall identify the claim with reasonable certainty; provided, that if such location certificate is not filed within three months from the date of discovery, but is so filed afterwards, and before third parties have acquired rights in the prem-

ises, it is sufficient compliance with this requirement of the law. An open cut or tunnel, which shall cut the lode at the depth of ten feet perpendicularly below the surface, or an adit of at least ten (10) feet in along the vein from the point at which the same is discovered, shall hold the lode the same as though a discovery shaft had been sunk as aforesaid. (2) If you find from the evidence that plaintiffs, during 1880, made a location of the premises in dispute by a full compliance with the law, as stated in the foregoing instruction, and that, during the year 1881, they placed thereon $100 worth of work or improvements or both, then you will find a verdict for the plaintiffs; provided you further find from the evidence that the date of their discovery preceded the discovery of defendant. (3) But, on the contrary, if you find from the evidence that plaintiffs failed to make a valid location of the premises in dispute, and that defendant has made the same by a full compliance with the law, as aforesaid, and, during the year 1881, defendant has performed the annual assessment work by the expenditure thereon of $100, as aforesaid, then you will find for defendant. (4) If you find from the evidence that plaintiffs were prevented from performing the annual assessment work of 1881 by defendant, his agents or employees, by force or violence, or by threats or intimidation, then, in law, plaintiffs are in the same position as though the same had been performed, and you should find that such assessment work had been done and performed. (5) If you believe from the evidence that the defendant discovered, located and recorded the Mammoth lode according to the requirement of law, as stated in other instructions, prior to the filing of plaintiffs' amended location certificate, January 12, 1882, you cannot consider such amended certificate of location of the Bristol lode for any purpose whatever, and must entirely discard the same in making up your verdict. (6) If you believe from the evidence that neither party has made a valid location of the premises in dis-

pute, under the law; or if you find that both parties failed to perform the work, or make their improvements thereon, required annually for the year 1881,— you will find your verdict that neither party is entitled to the possession of the premises." And refused other instructions asked on the part of defendant Craig, which will be referred to hereafter.

The verdict of the jury was for the plaintiffs for the ground in controversy. Defendant Craig moved for a new trial for the following reasons: " (1) That the court erred in admitting plaintiffs' amended location certificate in evidence; (2) that the court erred in refusing to admit the original location certificate offered by defendant in evidence; (3) that the court erred in refusing to allow the defendant to show that from the discovery shaft of the Bristol lode there were several known mountains and peaks in view, also a government monument, to which the said Bristol lode could have been tied; (4) that the court erred in refusing to give the instructions numbered as follows, asked for by defendant: 1, 2, 3, 4, 5 and 6; (5) that the court erred in giving instructions 1, 2, 3, 4, 5 and 6 [being the instructions given on the court's own motion]; (6) that the verdict is contrary to the law and evidence." Motion denied. Judgment rendered on verdict. Defendant reserved exceptions, and brings the case here on appeal. The errors assigned go to the admission in evidence of the amended location certificate of the Bristol lode, the charge made by the court, and the refusal to charge as requested, and to the verdict, that it was contrary to the law and the evidence.

Messrs. G. B. REED and P. C. ELLSWORTH, for appellant.

Messrs. HARTENSTEIN and SINDLINGER, for appellees.

STALLCUP, C. The questions assigned and argued here will be considered in the order presented.

1. Did the court err in admitting in evidence the amended location certificate of the Bristol lode? Upon the part of the appellant Craig it is insisted that this certificate of location was insufficient, for the reason that it did not refer to any permanent monument, as required by section 2324, Revised Statutes of United States, and that the rights of Craig had intervened. The requirement of this section is that the record of a mining claim shall contain "such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim." The amended location certificate locates the Bristol lode by reference to two mountain peaks,— one on the east side of Mission gulch on Clear creek;· the other, at the head of Lake Fork of Clear creek,— by giving the course or bearing of each from the discovery shaft in degrees and minutes. *Prima facie* this was sufficient, taken in connection with the balance of the description to identify the claim, and the amended location certificate was properly admitted in evidence. If other mountain peaks exist in the same vicinity, visible from the same point, or if, for any other reason, neither one of those mentioned in fact served to identify this claim, that was matter for the appellant to show by proper proofs.

2. Did the court err in refusing to give the first and third instructions asked for by appellant? They were as follows: "The court instructs you that, when a discovery is made by an open cut, such open cut must cut the lode at a depth of ten (10) feet, and such cut, to be a lawful discovery, must be ten feet deep below the natural surface; and if you find, from the evidence, that the discovery cut on the Bristol lode was not excavated to the depth of ten feet at any point below the natural surface, you must find that it was not a legal discovery. You are further instructed that a party cannot, in running an open cut for discovery, avail himself of any natural elevation and exposure of the vein above the natural surface, in esti-

mating the depth of such excavation; that the law contemplates depth which cannot be obtained by picking up the face of a cliff." "If you believe, from the evidence, that the so-called Bristol lode was discovered by an open cut or drift on the vein, then, in order to make a valid discovery, plaintiffs must have cut, by their work in such discovery, ten (10) feet below the surface." If the discovery cut of the Bristol lode was *in along the vein*,— and we think the testimony shows such to have been the fact,— then the foregoing instructions prayed for by the appellant do not conform to the requirements of the statute as construed by this court. In *Mining & D. Co. v. Van Auken*, 9 Colo. 207, it was held that the legislature had applied the term "adit" to an excavation "in and along a lode," and had fixed, as the initial point from which the development was to be measured, "the point where the lode may be in any manner discovered." The distance required for an adit to be run in, upon or along a lode is ten feet, without regard to depth. The testimony in the present case shows an excavation of the vein for a distance of about fourteen feet. The court instructed the jury, on its own motion, concerning the statutory requirements relating to depth of discovery shafts or open cuts, and the length of adits. The jury having been properly instructed, and its finding being supported by the evidence, there was no error in the rejection of the instructions mentioned.

3. Did the court err in refusing to give the following instructions for appellant: "The mining law of this state allows a person to locate a mining claim for himself and others, with his name and that of others on the location, and designating of the claim; and when one person thus locates a lode or claim for himself and those others, even though the others have no knowledge of the location, the persons who have no knowledge of the location of the same become tenants in common with the locator, and cannot be divested of their interests by the locator

afterwards tearing down the notice, and posting up another omitting their names, unless this is done with their knowledge and consent. And if you find, from the evidence, that a man by the name of Runkle was interested with Parry in said location or discovery, and, without his knowledge or consent, the stake was so changed that D. C. Sindlinger and George Thompson were to acquire any interest by virtue of such discovery, then you will find that such last staking was void and of no effect." "The mining law of this state allows a person to locate a mining claim for himself and others, with his name and that of the others on the location, and designating of the claim; and where one person thus locates a claim or lode for himself and those others, even though the others have no knowledge of the location, they by the same become tenants in common with the locator, and cannot be divested of their interests by the locator afterwards tearing down the notice, and posting another omitting their names, unless this is done with their knowledge and consent." There was no error in refusing these instructions. The evidence shows that Runkle had long since abandoned whatever rights he may have acquired in this claim. He was not a party asserting any rights in the action; nor does it appear that the appellant, Craig, or any one else, was authorized to represent him. It was a matter in which the appellant had no personal interest; and, had these instructions been given as prayed for, they would necessarily have introduced a false issue into the case. They were therefore properly rejected.

4. Was the verdict of the jury against the evidence and the instructions of the court? For the appellant it is insisted that as the original certificates of location of both claims were excluded for defects therein, and as the appellant was prior in point of time in making and recording the amended certificate, that thereby the appellant acquired the ground in controversy, and that the appellees lost the same. The discovery by Parry of the

Bristol on August 4, 1880, is conceded, together with the posting of the notice thereon showing the extent of the claim. On the 6th day of September thereafter, the appellant Craig met Parry, and, in a conversation with him, stated that he was on Parry's ground, and proffered purchasing a portion of the same from Parry. This conversation occurred away from the premises, two days after the date of the discovery of the Mammoth by appellant, and shows the knowledge of appellant of the Bristol claim, and the extent thereof. Parry had sixty days from August 4th in which to do the discovery work. The encroachments of appellant Craig on the Bristol during that time were trespasses, and no rights inured to appellant Craig thereby. The discovery work was duly done upon the Bristol, and it was duly staked. The location certificate was made thereafter, and recorded November 4, 1880. The certificate of location was defective, for the reason that it did not make reference to some natural object or permanent monument, so as to identify the claim, and for that reason was excluded from the evidence in the case; but testimony was admitted to show that by the amended location certificate of December, 1881, recorded January 12, 1882, that the same ground was thereby covered that had been covered by the original certificate.. So it is apparent that at the time defendant Craig located the Mammoth, to wit, September 4, 1880, the ground in controversy here was in such possession of Parry, as locator of the Bristol; that Craig was a trespasser thereon, and obtained no rights thereto by such trespass. *Mining Co. v. Mining Co.* 6 Colo. 380; *Ehrhardt v. Boaro*, 2 Colo. Law Rep. 89. And it appearing from the evidence that Parry made a location of the Bristol, valid in all other respects, but failed to file for record a valid certificate thereof, it follows that the amended certificate, made before Craig (through location acts performed after the expiration of Parry's time for locating) had acquired intervening rights, would, as

to Craig, relate back to, preserve and keep intact the Bristol claim as originally located and staked. There was no forfeiture or abandonment of the Bristol by appellees; so that, as against appellant Craig, by the execution of the amended location certificate of the Bristol in December, 1881, and recording of the same in January, 1882, the appellees continued to be the rightful possessors of the ground in controversy.

The judgment should be affirmed; RISING and MACON, CC., concurring.

PER CURIAM.    For the reasons assigned in the foregoing opinion the judgment of the district court is affirmed.

*Affirmed.*