## PROSECUTION OF A SUPERINTENDENT OF PUBLIC WORK FOR FRAUD.

Common Pleas Court of Hamilton County.

THE STATE OF OHIO V. AUGUST J. HENKEL, CONRAD HENKEL
AND WILLIAM W. CONEY, AND THE STATE OF OHIO V.
JOHN H. SUNDMAKER.

Decided, March, 1911.

*Criminal Law—Sufficiency of Indictment Under Section 12918, Relating to Fraud by a Superintendent of Public Work—Intent—Aider and Abettor May be Indicted Jointly or Separately.*

1. It is unnecessary to charge criminal intent in an indictment under a statute which does not make intent an essential element of the offense defined in the statute.
2. Charging in the indictment that one knowingly and unlawfully permitted a thing to be done is sufficient under a statute which makes it unlawful to knowingly permit the thing to be done.
3. An indictment is not indefinite and vague which charges that the defendant permitted "slag cement" to be used on a public improvement instead of "Portland cement," and which avers that the specifications call for the "best grade of Portland cement" and that "slag cement" is a different material from "Portland cement."
4. An aider and abettor may be indicted jointly with the principal offender or separately as for a substantive offense.

*Frank F. Dinsmore,* for Sundmaker.

*Louis J. Dolle* and *James B. O'Donnel,* for August and Conrad Henkel.

*Charles M. Leslie,* for Wm. W. Coney.

*Henry T. Hunt* and *Denis F. Cash,* for the State.

GORMAN, J.

Decision on motion to quash indictment.

These two cases will be considered and decided together. The motions to quash involve mostly the same questions of law. These motions were argued at the same time by counsel and voluminous briefs since submitted on behalf of the state and the defendants. Seven hours time was consumed in the oral argu-

ments and numerous authorities cited, all of which are again cited in the briefs. It would require a too lengthy opinion to refer to, distinguish and comment upon these authorities, and the court will therefore briefly take up the several objections made to the indictments, state the conclusion reached as to each point, and cite authorities which the court believes will sustain the conclusions arrived at.

The indictments in both cases were found and presented by the grand jury of this county at this, the January Term of this court, under favor of an act of the General Assembly passed April 21, 1910 (101 Ohio Laws, p. 13), entitled "An act to amend Section 12918 of the General Code relative to frauds by superintendents of public works." Section 12918 of the General Code, which was Section 6970, Revised Statutes, has been on our statute books for more than forty years, but the provisions thereof, until the recent amendment in 1910, applied only to the erection, etc., of public structures. By the last amendment above referred to the General Assembly enlarged the scope of the section and made it applicable not only to public structures, such as buildings, bridges, etc., but to "any public improvement whatever."

As applicable to the indictments under consideration, the amended section in substances provides that, an officer whose lawful duty it is to superintend the construction or improvement of * * * any public improvement whatever, or make a plan or specification of materials * * * or labor therefor, * * * who knowingly permits work to be done in a manner other than in accordance with the plans and specifications thereof, or with material different from that required thereby, or being a contractor * * * knowingly permits materials to be used therein * * * different from the plans and specifications and in violation of his contract shall be imprisoned in the penitentiary not less than one year nor more than five years.

This is not a new statute; as we have stated it has been on the books for more than forty years, but the scope and application only has been extended so as to cover every kind of public improvement. The things forbidden to be done thereunder have not been changed. The indictment in case No. 16382 in sub-

stance charges August J. Henkel and Conrad Henkel, as contractors, and William W. Coney, as their aider and abettor, with having violated this statute in this, that August J. Henkel and Conrad Henkel entered into a contract with the city of Cincinnati, through John H. Sundmaker, Director of Public Service of said city, and then and there an officer of said city, on or about May 20, 1910, for the making of a certain public street in the city of Cincinnati, county of Hamilton and state of Ohio, known as Reading road; that the plans and specifications for said improvement so contracted for required a certain material to be used in the work in and about said improvement, to-wit, "the best grade of Portland cement"; that on or about said 20th day of May, 1910, * * * August J. Henkel and Conrad Henkel, as contractors as aforesaid, did unlawfully and knowingly permit a certain material to be used in the making of the improvement aforesaid different from the plans and specifications, to-wit, slag cement, which was different from the material, to-wit, Portland cement, required by the plans and specifications, and in violation of their contract with the city of Cincinnati; and work was done in and about said improvement with a material, to-wit, slag cement, which was different from the material, to-wit, Portland cement, required as aforesaid, all with the knowledge and permission of said August J. Henkel and Conrad Henkel, contractors, and that William W. Coney did * * * unlawfully aid, abet and procure the said August J. Henkel and Conrad Henkel, partners, etc., to then and there unlawfully and knowingly permit the use as aforesaid of * * * slag cement in the making of said improvement, which was different from the material, to-wit, Portland cement, required by the plans and specifications, contrary to the form of the statute, etc.

The indictment in case No. 16384, against John H. Sundmaker, in substance charges that on or about May 20th, 1910, the defendant, John H. Sundmaker, was Director of Public Service for the city of Cincinnati, and an officer thereof, whose duty was to superintend and supervise the making of public improvements in said city; that on said date as such officer and on behalf of the city of Cincinnati he entered into a contract with August J.

Henkel and Conrad Henkel for the making of a public improvement, known as Reading road; that the plans and specifications for said improvement so contracted for required to be used in the work the best grade of Portland cement; that said John H. Sundmaker, as Director of Public Service, did unlawfully and knowingly permit work on said improvement by said August J. and Conrad Henkel, the contractors, with a certain material different from that required by the plans and specifications, to-wit, a slag cement, which was different from the material, to-wit, Portland cement, required by the plans and specifications, and that said Henkels did then and there do work in and about the making of said improvement with material, Portland cement, required as aforesaid, all with the knowledge and permission of said Sundmaker, contrary to the form of the statute, etc.

To these indictments the defendants have all filed motions to quash, setting forth several grounds therein as objections to the indictments, most of which objections are the same in all the motions, but some differing. We shall take up and dispose of first those objections that are common to all the motions to quash.

The general ground of objection to the indictments is that they are too vague, uncertain and indefinite and do not advise the defendants of the nature of the charges, and of the facts claimed to constitute a crime under the laws of Ohio. Section 13621 of the General Code, provides that a motion to quash may be made where there is a defect apparent upon the face of the record, including defects in the form of the indictment or in the manner in which the offense is charged.

In the case of *State* v. *Toney*, 81 O. S., page 130, Judge Spear on page 141 says, in ruling upon the correctness of the nisi prius court's finding on a motion to quash:

"The test is, has the accused party been apprised in the indictment of the charge against him so that he may know what he is expected to meet and will be required to answer?"

The statute of *jeofail*, Section 12581, General Code, provides that an indictment shall not be invalid, and the trial, judgment or other proceedings stayed, arrested, or affected, when there is sufficient matter alleged to indict the crime and person charged

or for other defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits.

In this connection it is well to remember that a motion to quash addresses itself to the sound discretion of the court and is never granted except in very clear cases, because the defendant may raise the questions in a more formal way by demurrer or motion in arrest of judgment. Indeed this motion should never be granted, the courts say, if the questions are in any degree doubtful. *Ex parte Bushnell,* 8 O. S., 599.

But we are not disposed in this matter to apply the rule just stated, but rather to give the defendants the benefit of any and all doubts that may be raised as to the validity of the indictments under the motions.

The first and most strenuous objection raised under the motions is that the indictments do not charge criminal intent, or intent, and for that reason they are invalid. It is urged that there is in law a general intent and a specific intent, and that inasmuch as the act of permitting to be used, or using a material different in the improvement from that required by the specifications, may be done innocently and in good faith, and that guilty knowledge must exist in the mind and accompany the doing of the act to make it a crime, there must be an averment of intent or criminal intent in the indictment. Many cases have been cited by counsel in support of this contention, but it will be found on a careful examination of most of these authorities that it has been generally held that the intent or criminal intent must be set out only when the statute makes intent, criminal intent, or felonious intent a material part of the crime or offense. The general rule is that in laying a statutory crime or offense the words of the statute shall be used and that will be sufficient. Therefore where intent, knowledge, willful, purposely and such like words are used in the statute to define the crime they must be set out in the indictment or it will be held defective on a motion to quash. The rule in this state appears to be that wherever the statute makes intent, knowledge, or in the language of the books the *scienter* a part of the statutory description of the offense it must be laid in the indictment. *Gatewood* v. *State,* 4

Ohio, 386; *Fouts* v. *State,* 8 O. S., 98; *Drake* v. *State,* 19 O. S., 211.

It is true that in the following cases the court has held that the indictment must contain a scienter and the proof must show knowledge although the statute defining the offense did not contain the words "intent," "knowingly." or words of like import and meaning. *Birney* v. *State,* 8 Ohio, 230 (Salmon P. Chase's fugitive slave case); *Miller* v. *State,* 3 Ohio State, 475; *Aultfather* v. *State,* 4 O. S., 467; *Farrel* v. *State,* 32 O. S., 456. But these cases were all considered and not followed in *Kelley* v. *State,* 54 O. S., 166, and *Studor* v. *State,* 9 C.C.(N.S.), 185 (affirmed without report, 74 O. S., 519).

The rule as to scienter, intent and knowledge is stated as follows in the 10th Volume of the Am. & Eng. Ency. of Pleading and Practice, pp. 491-492: "It is a universal rule that when criminality of the act depends upon its intent or object, that intent must be specified, else no crime will be charged. But the allegation may be made in general terms and if the purpose forms no part of the offense or if the act itself is expressly condemned whatever the purpose may be it is not necessary to allege the intent." *Harding* v. *People,* 10 Colo., 394; *State* v. *McCallum,* 44 Mo., 344; *Commonwealth* v. *Stout,* 7 B. Monroe, 249; *People* v. *Walbridge,* 6 Cowing (N. Y.), 512; *Rex* v. *Phillips,* 6 East., 464; *Smart* v. *White,* 73 Me., 332; *Robins* v. *State,* 8 O. S., 130; *Harris' Criminal Law* (Force Ed.), 13-14-15; *State* v. *Carson,* 1 W. L. M., 333; *Mitchell* v. *State,* 21 C. C., 24; *Kelley* v. *State,* 54 O. S., 166; *Bissman* v. *State,* 9 C. C., 714; *Studor* v. *State,* 9 C.C.(N.S.), 185; *Haas* v. *State,* 1 Nisi Prius, 248; *State* v. *Ice Delivery Co.,* 5 N.P.(N.S.), 89-106-107; *State* v. *Skransewfky,* 5 N.P.(N.S.), 177; *State* v. *Sommerville,* 1 N. P., 472; *State* v. *Fromer,* 7 N. P., 172.

The indictments charge the defendants with "unlawfully and knowingly" doing the things prohibited by the statute.

In the case of *State* v. *Murray,* 82 O. S., 305, the defendant was charged, exactly as in the case at bar, with unlawfully and knowingly permitting a bucket shop office to be kept in premises owned and occupied by him in violation of Section 6934a-5, Revised

Statutes; held that the indictment was good. The statute under which the defendant was indicted, provided that whoever *knowingly permits* any of the forbidden acts to be done shall be fined, etc. A similar ruling on a motion to quash was sustained where the indictment charged that the defendant "knowingly and unlawfully" kept a place where intoxicating liquors were sold contrary to the statute which made it unlawful to keep a place where such liquors were sold. *Hamilton* v. *State,* 78 O. S., 76.

The statute under which these indictments are drawn makes it an offense to knowingly use or permit to be used material different from that provided in the plans and specifications, and under the authorities cited and many more that might be cited, it would seem that the averment that the acts were unlawfully and knowingly done is sufficient to enable the state to prove knowledge, intent and purpose.

Nor is the rule that it is sufficient to lay the indictment in the language of the statute omitting the averment as to intent, knowledge and purpose where they are not set out in the statute, confined in this state to offenses under the police power. The rule applies to felonies as well as to misdemeanors. See *Studors* v. *State,* 9 C.C.(N.S.), 185, which was a case of felony; also the case of *State* v. *Skansewfky,* 5 N.P.(N.S.), 177, a blackmailing case and a felony. Many other cases might be cited, but it is sufficient to state that the rule above quoted appears to make no exceptions as to misdemeanors or offenses not of a heinous character under the exercise of the police power.

Again it is urged that the averment that the defendant unlawfully and knowingly permitted the acts to be done, or did the acts is not broad enough to cover knowledge of the difference between the two cements or that there was a difference, but that the word refers only to the knowledge that the different cement was used. It seems to the court that the expression knowingly permitted to be used a different cement must necessarily involve and imply knowledge that the cement substituted was different from that provided for in the specifications.

Section 504, Bishop's New Criminal Procedure, lays down the rule that knowledge or well knowing will supply the place of a

positive averment that the defendant knew the facts subsequently stated.    See, also, *Rex* v. *Lawley*, 2 Strange, 904; *Starkie's Criminal Pleadings*, Chap. VIII, p. 183.

We have read the case of *Commonwealth* v. *Boynton*, 12 Cush. (Mass.), 66 Mass., 499, and are unable to see that the expression "knowingly sold" and "knowingly used" and "knowingly permitted" are necessarily expressions which limit the knowledge to the act; but it seems to the court that the state of mind with reference to the kind of material used is necessarily involved in the expression "knowingly and unlawfully permitted" to be used, etc., found in these indictments.

Again it is urged that the indictments are indefinite and vague in that they fail to make it clear that slag cement is a different material from Portland cement or the best quality of Portland cement.

The indictment avers that the defendants used or permitted to be used slag cement, which is a different material from that provided for in the plans and specifications, to-wit, Portland cement. Neither the statute nor the indictment is directed against different qualities of the same material, but different materials, and the averment seems clear and unequivocal that slag cement is a different material from Portland cement; "best grade" used in the specifications has reference to the quality of the Portland cement, and if the indictment were required to set out the component parts of Portland cement and slag cement it would be pleading evidence, in the opinion of the court.    It seems to the court that the defendants are fully apprised of the nature of the charge when it is averred that there was used slag cement, which is a different material, not a different grade or quality of the same material, from the material set out in the specifications.

The DuBrul case, 80 O. S., relied upon by counsel for defendants, does not apply to the averments of the indictments under consideration, because in the DuBrul case there was no statement or averment setting out wherein the sheep claim was false and fraudulent.    It was merely averred that the claim was false and fraudulent without stating in what particular it was so.

The same comment or criticism may be made with reference to the Groenland case, 4 N. P., 122. The affidavit averred that said solution, sub-acetate of lead, recognized by the U. S. Pharmacopoea and used externally as a medicine, was adulterated in the following respects, to-wit: said solution, sub-acetate of lead, differed from the standard strength laid down in said U. S. Pharmacopoea, contrary to the statute in such case made and provided. There appears no averment to show wherein the drug sold was different from the standard strength laid down by the U. S. Pharmacopoea. The statute under consideration in that case provided that.if the drug fell below the standard strength laid down by the U. S. Pharmacopoea it would be considered adulterated. Now the court said in deciding the case: ''The charge in the affidavit should have set out the standard elements or character of the drug, the sub-acetate of lead as described in the U. S. Pharmacopoea * * * and the constituent elements of the defendant's drug—*or at least that element in which it differed from the standard.* In the cases at bar the indictment sets out the material to be used as provided by the specifications and also avers that there was used and permitted to be used slag cement, which is different from Portland cement. If in the Groenland case it had been averred that white lead was used or sold instead of sub-acetate of lead it is probable that the affidavit might have been held sufficient. The affidavit in this case was open to the same objection that was made to the indictment in the DuBrul case, 80 O. S.

It was laid down in *Stoughton* v. *State,* 2 O. S., 563, that:

''Unreasonable strictness ought not to be required; and where an indictment clearly charges a crime, and fairly advises the defendant what act of his is the subject of complaint, the principal object of pleading is attained. The highest degree of certainty is not required; certainty to a common intent is sufficient, and no rule ought to prevail which would only serve to shield the guilty instead of protecting the innocent.''

In this enlightened age of progress, the courts and counsel must keep pace with the modern advancement of the science of the law. It was ever intended as a shield to protect the innocent, and a

flaming sword to strike down the guilty.   No quibbling or cavil-
ing should be tolerated by the courts.   The ancient practices of
evading the toils of the law, because the t's were not crossed or
the i's dotted can have no place in a practice that should be ap-
plied to a modern criminal trial.   Certainty, celerity and sim-
plicity in practice and procedure should be the handmaids of
criminal trials, to the end that speedy justice shall be meted out
to all offenders and that no guilty one shall escape nor any inno-
cent person suffer.   Delays and frivolous pleas should not be
countenanced and there should, at some stage of the proceedings
in criminal cases, be an occasional doubt resolved in favor of the
state and not every doubt against it.   A fair reading of the in-
dictments in these cases leads the court to feel satisfied that they
are sufficient to substantially comply with the rigid rules laid
down to govern the prosecution in the drawing of indictments,
and the defendants it would seem are clearly and sufficiently ap-
prised of the nature of the charges which they are to face.

Forms of indictments not more certain, definite and clear than
those under consideration were sustained on being attacked by
motion to quash or on demurrer; and a perusal of these cases may
serve to enlighten us as to the extent the courts are going in
these times to uphold the indictments and to restore the criminal
branch of the law to the position it should occupy, the protector
of the innocent, the nemesis of the guilty.   *Hogue* v. *State,* 3 C.C.
(N.S.), 315; *Adams* v. *State,* 14 O. C. D., 257; *State* v. *Groves,*
80 O. S., 351; *State* v. *Toney,* 81 O. S., 130; *State* v. *Murray,* 82
O. S., 305.

As to William W. Coney it is urged that the indictment does
not set out any facts as to how this defendant aided and abetted
the Henkels in the violation of the statute.   By the provisions
of Section 12380, General Code, formerly Section 6804, Revised
Statutes, it is provided that whoever aids, abets or procures an-
other to commit an offense may be prosecuted and punished as
if he were the principal offender.

Now under this section it has been held that the aider and
abetter may be indicted separately as an original offender, in
which case all the averments necessary to show the commission of

the crime by him must be set out; or he may be indicted jointly with the principal offender, in which case it is only necessary to charge in the same count against the principal offender all the material averments necessary to be set out to show the commission of the offense by him and then to add that the aider and abettor did unlawfully and knowingly aid, abet and procure the principal offender in the commission of the offense. Illustrations of these two methods of proceeding will be found in the cases of *Hartshorn* v. *State,* 29 O. S., 635, and *Hotelling* v. *State,* 3 C. C., 630.

The case at bar as to Coney falls under the form of indictment approved in the Hotelling case. All the necessary averments to constitute the crime against the Henkels, the principals, are set out: the indictment as to them is complete and contains all the necessary ingredients of the crime, the description of the overt act and all other material matters. When this is done the charge that the accused, Coney, aided, abetted and procured the commission of the offense is sufficient.

When the aider and abettor is indicted as the principal offender it is not necessary to indict the principal at all or to convict him or he may be convicted of a lower offense. *Wilson* v. *State,* 2 C. C., 40; *Goins* v. *State,* 46 O. S., 457-462; *Hanoff* v. *State,* 37 O. S., 178.

Counsel for Coney rely on the case of *Searles* v. *State,* 6 C. C., 331, as authority that where the aider and abettor can not be prosecuted as the principal, it is not sufficient to charge him merely as aider and abettor, but that he must in such case be indicted as for a distinct and substantive offense. This contention seems to have been made in the Hartshorn case, 29 O. S., and held otherwise. It was urged that the case in 6 C. C., 331, *supra,* on page 344, holds that Searles not being the owner of the property burned could not be guilty under Section 6832, Revised Statutes, which made it a crime for any one to burn his own property to defraud an insurance company, and that he could not be held guilty of being an aider and abettor in a crime wherein it is impossible that he should be principal. But the court held this argument to be unsound and further held that a person though not

the owner of property might be guilty of a substantive offense, if he aided and abetted the owner to commit the crime of burning his own property. All that was decided in the 6 C. C. case was that the indictment was defective as to Searles because it failed to aver that the owner, John Ries, burned the property in question. In that case Searles was not indicted jointly with Ries, the owner of the property, but was indicted alone as an aider and abettor and guilty of a substantive offense, and in such case the proper form of indictment was to set out all the averments necessary to show that Ries was the principal offender and Searles the aider and abettor, as was done in *Noland* v. *State*, 19 Ohio, 131.

In the case at bar it seems to the court that the indictment contains all the averments necessary to show the commission of the offense by the Henkels, and the averment that Coney aided and abetted them is sufficient to make all their acts referrable to him. Upon a consideration of all the authorities cited and their application to the indictments under consideration, I am convinced that the motions are not well taken and they are therefore overruled.